UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MICHAEL MALOTT, # 467434, | |
| Plaintiff, | Case No. 1:15-cv-1148 |
| v. | Honorable Gordon J. Quist |
| THOMAS MACKIE, et al., | **REPORT AND RECOMMENDATION** |
| Defendants. | |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint arises out of conditions of his confinement at the Oaks Correctional Facility (ECF). The defendants are eleven employees of the Michigan Department of Corrections (MDOC) at ECF: Warden Thomas Mackie, Kenneth Yount, Shawn Johnson, Matthew Hill, Paul Schreiber, Everett McLinden, Kevin Hall, Adeyinka Awomolo, Timothy Ball, Eric Riggs, and Jason Thomas.

Plaintiff filed this lawsuit on November 3, 2015.[1] (ECF No. 1). He alleges that on September 17 or 18, 2015, defendants Riggs, Johnson, and Hall were involved in the removal of his clothing, bedding, mattress, and other items from ECF Cell # 225. Plaintiff claims that he spoke to defendants Thomas, Ball, Yount, Hill, Riggs, Schreiber, Awomolo, and McLinden, and complained that he was cold and needed the return of his clothes, bedding, and mattress. Plaintiff alleges that he was moved to

---

[1] This filing date gives plaintiff the benefit of the "mailbox rule." *See Williams v. Birkett*, 670 F.3d 729, 732 n.1 (6th Cir. 2012).

other cells at ECF on September 18, October 2 and 5, 2015, and that defendants denied his requests for the return of his clothes, bedding, and mattress. Plaintiff alleges that he wrote letters to Warden Mackie on September 21, 24, and 28, and that the warden failed to "rectify the problem." (Compl. at 5-6, PageID.5-6). Plaintiff's *pro se* complaint was indulgently construed as alleging violations of his rights under the Eighth Amendment's Cruel and Unusual Punishments Clause. Plaintiff sues all defendants in their individual and official capacities. (*Id.* at 3-4, PageID.3-4). He seeks an award of damages and declaratory and injunctive relief. (*Id.* at 7, PageID.7).

On January 26, 2016, defendants filed a motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a). (ECF No. 26). Plaintiff opposes defendants' motion. (ECF No. 31-33). For the reasons set forth herein, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity. I recommend that defendants' motion for summary judgment based on section 1997e(a) be denied.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could

reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to

-5-

dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[2] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district

---

[2] A copy of the policy directive is found in the record. *See* ECF No. 27-2, PageID.109-15.

court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or

assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or the warden's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199

F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

### Facts

The following facts are beyond genuine issue.  Plaintiff's complaint concerns conditions of his confinement at ECF between September 17 and October 5, 2015.  On or about September 18, 2015, plaintiff was charged with the misconduct of covering his cell window with a blanket and refusing to respond to prison staff.  On September 18, 2015, he was placed on blanket and quartermaster restriction.  (ECF No. 32-1, PageID.217).

On September 28, 2015, plaintiff filed a Step I grievance and it was assigned Grievance No. 2015-09-2776-27Z.[3]  (ECF No. 32-1, PageID.222).  This was a grievance against defendants Mackey, Yount, Johnson, Hill, Schreiber, McLinden, Hall, Awomolo, and Ball.  Plaintiff complained that on September 18, 2015, items had been removed from his cell before he was found guilty of the misconduct charge and

---

[3] A few days earlier, the grievance coordinator had denied a grievance that plaintiff had requested for the purpose of complaining that it was illegal to impose a quartermaster restriction on him.  (ECF No. 33-1, PageID.254).  Plaintiff was on grievance restriction for his abuse of the grievance system.  (ECF No. 32-1, PageID.239).

depriving him of the clothing and bedding constituted cruel and unusual punishment. The Step I grievance response is dated September 28, 2015, and it indicates that plaintiff was "placed on paper and quartermaster restriction on 9/18/15." (*Id.*).

On October 16, 2015, plaintiff made up a Step II appeal form regarding Grievance No. 2015-09-2776-27Z. (ECF No. 32-1, PageID.233-34). He states that the Step II appeal was returned to him on October 20, 2015, without any action being taken. (Plf. Aff. ECF No. 32-1, PageID.238; ECF No. 33-1, PageID.33-1, PageID.251).

Defendants filed a Step III Grievance Report which indicates that plaintiff did not file any grievance corresponding to his claims against defendants through a Step III decision before he filed his complaint on November 3, 2015. (ECF No. 27-3, PageID.118-39, 141-89).

## Discussion

### I. Eleventh Amendment Immunity

Plaintiff's claim for damages against defendants in their official capacities are barred by Eleventh Amendment immunity.[4] The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented

---

[4]Because it implicates important questions of federal court jurisdiction and federal-state comity, it is appropriate for the Court to raise the issue of Eleventh Amendment *sua sponte*. *See Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015) (collecting cases); *see also Cady v. Arenac County*, 574 F.3d 334, 342-45 (6th Cir. 2009).

to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to dismissal with prejudice of plaintiff's claims for monetary damages against them in their official capacities.

## II.     Defendants' Motion for Summary Judgment

Defendants have raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a). It is undisputed that plaintiff did not pursue any grievance corresponding to his claims against defendants through a Step III decision.

Plaintiff has presented some evidence and argument that he was unable to pursue a grievance through a Step III decision while he was an inmate at ECF because the process was not available to him. (Plaintiff's Brief at 1-2, ECF No. 31, PageID.196-97; Plaintiff's Affidavits, ECF No. 33-1, PageID.250-51). Defendants did not present argument, affidavits, and other evidence establishing the availability of the MDOC's grievance process during the period at issue, September 17, 2015, the date of the earliest incident alleged in the complaint, and November 3, 2015, the date plaintiff filed his complaint. Defendants did not file a reply brief addressing plaintiff's arguments that the grievance process was not available on his claims against

defendants.  A prisoner need only exhaust "available" remedies.  *See Ross v. Blake*, 136 S. Ct. 1850, 1862 (2016).  Accordingly, I find that defendants have not carried their burden on the affirmative defense.

## Recommended Disposition

For the foregoing reasons, I recommend that all plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.  I recommend that defendants' motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (ECF No. 26) be denied.


Dated:   July 26, 2016                          /s/  Phillip J. Green
                                                United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).